**Benito ANCIRA, Jr., Appellant,**

**v.**

**The STATE of Texas, Appellee.**

**No. 48935.**

Court of Criminal Appeals of Texas.

Dec. 18, 1974.

M. N. Garcia, Austin, for appellant.

Jim D. Vollers, State's Atty., and Larry Gist, Asst. State's Atty., Austin, for the State.

## OPINION ON APPELLANT'S MOTION FOR REHEARING

DAVIS, Commissioner.

Appeal is taken from a conviction for possession of heroin. Trial was before the court upon a plea of not guilty. Punishment was assessed at five (5) years.[1]

On original submission, judgment was affirmed in a per curiam opinion reciting that "there is no showing that the appellate brief was filed in the trial court as required by Article 40.09, Section 9, V.A.C.C.P." The Clerk of the 207th District Court has by supplemental transcript forwarded to this Court his original appellate brief reflecting a file mark of March 29, 1974. See Art. 40.09, Sec. 15, Vernon's Ann.C.C.P. Thus, the record now reveals that his appellate brief was timely filed in the trial court.

Appellant urges that the trial court erred in overruling his motion to suppress evidence acquired as the result of custodial interrogation of appellant without Miranda warnings being given.

In Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694, the United States Supreme Court held that evidence obtained as the result of a custodial interrogation was inadmissible unless the State proved that proper warnings were given to the defendant and an affirmative waiver of rights was shown. See Art. 38.22, V.A.C.C.P. Custodial interrogation was defined in *Miranda* as "questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way."

Officer Reed of the Lockhart Police Department received information from a reliable informer, who had previously given him information resulting in convictions prior to the date in question, that appellant was selling heroin on the street corners in Lockhart. Reed testified that on October 8, 1972, the date that the events in question transpired, there was no doubt in his mind that appellant was selling heroin, and that appellant was a "Class-A suspect for selling heroin." On said date, Reed was clad in uniform and driving a police vehicle when he saw appellant get out of a car in front of appellant's house. The record reflects the following testimony of Reed regarding his reason for stopping in front of appellant's house.

"Q. What was your purpose in pulling up there then?

"A. Talking to Benny [appellant].

"Q. Why did you want to talk to him?

"A. About selling heroin.

"Q. I see, you knew he was selling it, then?

"A. Yes, sir.

"Q. So your plan was to interrogate him?

\*       \*       \*       \*       \*       \*

"Q. Is that right?

"A. Yes, sir."

---

1. On original submission, the Court noted that the judgment did not recite punishment required by Art. 42.01, V.A.C.C.P., pointed to the fact that a docket entry dated the same day as the judgment reflected punishment as having been assessed at five years, and reformed the judgment to reflect the punishment assessed to be five years. Ferguson v. State, Tex.Cr.App., 367 S.W.2d 695; Coffman v. State, Tex.Cr.App., 379 S.W.2d 656.

Pursuant to Reed's request, appellant came over to the police vehicle, and at this point Reed testified, "I told Benny [appellant] I would like to talk to him, if he would ride around and talk awhile, and he said he would." In response to examination by appellant's counsel, Reed stated his "sole and only purpose was to interrogate him [appellant] about selling heroin." After telling appellant that he had information that appellant was selling heroin, Reed stated that "He [appellant] shook his head that he was selling heroin." Reed then asked appellant if he had any heroin at the house or on him at that time and, according to Reed, appellant said "that he did have some on him at that time." Reed stopped the car, both men got out and, in response to Reed's request, appellant gave Reed the contraband he had on his person. The testimony of Reed reflects that from the time he picked appellant up until he stopped the car "ten to fifteen minutes" elapsed, and the sole topic of the conversation was heroin. Miranda warnings were given appellant for the first time after he surrendered the heroin to Reed.

The State points to the testimony of Reed that he did not warn appellant of his rights at a prior point in time for the reason that appellant was not under arrest, and that the officer would have let appellant go if he had expressed such a desire.

■ The questioning of appellant by the officer in the police vehicle cannot be characterized as a general investigation into an unsolved crime,[2] nor was the questioning made under circumstances to bring it within the ambit of general on-the-scene investigatory process.[3]

■ While questioning does not have to occur at the police station for Miranda warnings to be required, Orozco v. Texas, 394 U.S. 324, 89 S.Ct. 1095, 22 L.Ed.2d 311

(1969), Miranda stated, "[C]ompulsion to speak in the isolated setting of the police station may well be greater than in courts or other official investigations, where there are often impartial observers to guard against intimidation." We see little difference in questioning in the police station and interrogation in a police vehicle. Only appellant and Officer Reed were present in the patrol car. The officer's testimony reflects that he was armed and in uniform and the vehicle bore police insignia. The setting was such that the potential for compulsion existed.

■ It is not necessary that an accused be under formal arrest prior to the interrogation for Miranda rights to arise. Windsor v. United States, 389 F.2d 530 (5th Cir., 1968). In Windsor, it was held that Miranda rights had arisen, and the Court said, "The Government agents' testimony that Windsor was not a suspect and not under arrest when questioned in his motel room is belied by the facts of the case. . . . Windsor was definitely the central figure in their investigation . . .."

In Brown v. State, supra, and Jones v. State, Tex.Cr.App., 442 S.W.2d 698, where this Court held that Miranda rights had not arisen, it was noted that the investigation had not begun to focus on the accused. In United States v. Phelps, 443 F.2d 246 (5th Cir., 1971), the significance of whether or not the focus of the investigation had finally centered on the defendant was discussed:

" . . . [W]e have noted several significant factors which should be considered in determining whether or not a defendant is in custody. For example, probable cause to arrest, subjective intent of the police, focus of the investigation, and subjective belief of the defendant have all been deemed relevant.

---

2. See Brown v. State, Tex.Cr.App., 475 S.W. 2d 938, and numerous cases cited therein.

3. See Graham v. State, Tex.Cr.App., 486 S.W.2d 92; Evans v. State, Tex.Cr.App.,

480 S.W.2d 387; Calhoun v. State, Tex.Cr. App., 466 S.W.2d 304.

United States v. Montos, supra. [421 F.2d 215, 5th Cir., 1970] However, throughout the decisions one of these factors has consistently impressed our court: whether or not the focus of the investigation has finally centered on the defendant. In Miranda itself the Supreme Court explained that 'in custody' was a short-hand phrase for what Escobedo v. Illinois, 1964, 378 U.S. 478, 490, 84 S.Ct. 1758, 12 L.Ed.2d 977, described as an investigation which has focused on an accused. Similarly, in Windsor v. United States, supra, 389 F.2d at 533, we held that Miranda was applicable since

> " 'The obvious purpose of the agents interrogating him was to elicit an incriminating statement for "the investigation was no longer a general inquiry into an unsolved crime" but had begun "to focus on a particular suspect" namely, Windsor.' "

Reed testified that there was no doubt in his mind that appellant was selling heroin, and that appellant was a "Class-A suspect for selling heroin." Reed had received information from a reliable informer that appellant was selling heroin. His purpose in asking appellant to get into the police car was to interrogate him about the sale of heroin. Clearly the investigation had focused on the appellant. The State's argument that the investigation had focused on appellant's selling heroin rather than on appellant's possession of heroin is not persuasive.

■ While we deem the setting in which the interrogation took place and the specific focus of the investigation on appellant very significant factors, we find it difficult to formulate a general rule to distinguish custodial interrogation from non-custodial interrogation. A case by case approach in which the evidence is reviewed in the light of *Miranda* and subsequent decisions is deemed necessary.

A careful review of all the pertinent circumstances in the instant case dictates that appellant's inculpatory statements and sur-

render of the contraband resulted from custodial interrogation. The failure to comply with Miranda v. Arizona, supra, and Art. 38.22, V.A.C.C.P., rendered same inadmissible.

Appellant's motion for rehearing is granted, the judgment of affirmance is set aside, and the judgment is reversed and the cause remanded.

Opinion approved by the Court.