COURT OF APPEALS









COURT
OF APPEALS

EIGHTH
DISTRICT OF TEXAS

EL
PASO, TEXAS

 

JIMMY WAYNE BAILEY,                                  )

                                                                              )              
No.  08-03-00458-CR

Appellant,                          )

                                                                              )                    Appeal from the

v.                                                                           )

                                                                              )                
401st District Court

THE STATE OF TEXAS,                                     )

                                                                              )             
of Collin County, Texas

Appellee.                           )

                                                                              )               
(TC# 401-80002-03)

                                                                              )

 

 

O
P I N I O N

 

Jimmy Wayne Bailey
appeals his conviction by a jury of the offense of aggravated sexual assault of
a child.  The jury assessed his
punishment at 18 years in the Texas Department of Criminal Justice,
Institutional Division.  He contends in
four points of error on appeal that the trial court abused its discretion in
denying his pretrial motion to suppress two oral statements and two written
statements that he had given.  We affirm.








Bailey asserts in
Point of Error One that the trial court abused its discretion in denying his
pretrial motion to suppress oral statements made to Secret Service Agent
Richard Hudson.  The trial court is the
exclusive trier of fact and judge of the credibility of the witnesses and the
weight to be given their testimony at a hearing on a motion to suppress
evidence.  Cobb v. State, 85
S.W.3d 258, 271 n.50 (Tex.Crim.App. 2002). 
Furthermore, Atrial
courts have broad discretion in their evidentiary rulings and [they] . . . are
usually in the best position to make the call on whether certain evidence
should be admitted or excluded.@  Cobb, 85 S.W.3d at 271 n.50, quoting
Guzman v. State, 955 S.W.2d 85, 89 (Tex.Crim.App. 1997).  Mixed questions of law and fact that turn on
the credibility and demeanor of a witness are reviewed under the 

almost-total-deference standard,
and mixed questions of law and fact that do not turn on the credibility and
demeanor of a witness are review de novo.  Id. 
Also, we examine the evidence in the light most favorable to the trial
court=s
ruling.  Id.  In determining whether the record supports a
trial court=s
decision, we generally consider only evidence presented at the suppression
hearing because the ruling was based on it rather than the evidence introduced
later.  Rachal v. State, 917
S.W.2d 799, 809 (Tex.Crim.App. 1996). 
However, when the alleged error is the admission of evidence at trial
and the issue was consensually litigated there, we will consider the evidence
to have been re-opened.  Barley v.
State, 906 S.W.2d 27, 31 n.2 (Tex.Crim.App. 1995).  At trial, evidence was presented, without
objection, which related to the issue of custodial interrogation.  We hold that the issue was re-opened at
trial.  Therefore, in ruling on Appellant=s issue, we will consider evidence
relating to custodial interrogation that was presented both upon the hearing on
the motion and during the trial.








Bailey was the
stepfather of the complainant S.W., a child less than two years old.  When he became suspected of sexually abusing
this child, Bailey denied it and agreed to a polygraph examination.  Richard Hudson, an officer of the United
States Secret Service who runs polygraphs and conducts interviews for the
service, conducted the examination.  He
indicated that he conducted such tests on a volunteer basis for the Collin
County Children=s
Advocacy Center.  The polygraph
examination was conducted at the Center. 
Bailey was brought to the Center from jail, where he was being held on
unrelated charges.  After advising Bailey
that he is an officer for the United States Secret Service, Hudson advised him
of his rights prior to the beginning of the polygraph examination.  After the polygraph examination proved
inconclusive, Hudson asked Bailey why he did not pass the examination.  In the course of their conversation, Bailey
admitted to Hudson that he inserted his finger into the child=s vagina in an effort to stop her from
crying.

Agent Hudson did
not record Bailey=s oral
statement because to do so was contrary to policies of the United States Secret
Service.  Agent Hudson acknowledged that
even though he does such work voluntarily, he sends a report to his
headquarters for review, which then sends a copy back to local law
enforcement.  At trial, he noted that he
is a Secret Service officer 

twenty-four hours per day and seven
days per week, and that when he conducted the examination, he did it during
Secret Service time because it was a regular day in which he was collecting a
regular paycheck from the Secret Service. 
He also acknowledged having received training either in the Secret
Service or as a former Dallas police detective in interrogation techniques.  When asked at trial if he had used psychological
interrogation techniques in questioning Bailey, Hudson stated, AI would say that any interview has a
certain amount of psychological.  The
very presence of a law enforcement officer in the room is psychological, I
mean.@  When witnessing a written statement given to
Michelle Hiza of the Texas Department of Child Protective Services, or CPS, he
identified himself as an agent of the United States Secret Service and included
an identification number.








Bailey objected to
the introduction of the oral statement he made to Hudson on the basis that the
State did not comply with the requirement of Article 38.22, ' 3(a)(1) that a recording be made of
the statement in order for it to be admissible. 
Tex.Code Crim.Proc.Ann.
art. 38.22, ' 3(a)(1)(Vernon
2005).  By its terms, the statute applies
only to statements that are made as a result of custodial interrogation.  Tex.Code
Crim.Proc.Ann. art. 38.22, '
3(a).  The State contends that Bailey=s statement was not made as a result of
custodial interrogation.  As we
understand the trial court=s
ruling, the court implicitly held that the interrogation was 

non-custodial because at the time
Hudson took the polygraph examination and interrogated Bailey, he was an agent
of Child Protective Services, not the police, and was therefore not a law
enforcement agent.  The State contends
the trial court did not abuse its discretion in making this finding.

It is undisputed
that the oral statement that Bailey made to Hudson would not be admissible if
it were the product of a custodial interrogation because it did not meet the
requirement of Article 38.22, '
3(a)(1) of the Texas Code of Criminal Procedure that it be recorded.  The determining issue, then, is whether
Bailey=s oral
statement to Hudson stemmed from custodial interrogation.

At a suppression
hearing, the trial judge is the sole judge of the credibility of the witnesses
and of the weight to be given their testimony. 
Cantu v. State, 817 S.W.2d 74, 77 (Tex.Crim.App. 1991).  The judge may believe or disbelieve any or
all of any witness=s
testimony.  Id.  The trial court=s
findings should not be disturbed absent a clear abuse of discretion.  Id.








The Texas Court of
Criminal Appeals has held that it is difficult to formulate a general rule to
distinguish custodial interrogation from non-custodial interrogation.  Ancira v. State, 516 S.W.2d 924, 927
(Tex.Crim.App. 1974).  Miranda
defines Acustodial
interrogation@ as
questioning initiated by law enforcement officers after a person has been taken
into custody or otherwise deprived of his freedom of action in any significant
way.  Miranda v. Arizona, 384 U.S.
436, 444, 86 S.Ct. 1602, 1612, 16 L.Ed.2d 694, 706 (1966).

In this case,
Hudson was a law enforcement officer who initiated questioning of Bailey.   Bailey was in custody at the time of the
polygraph examination, although it was on unrelated charges.  Consequently, it would appear that the facts
as we have related them show that Bailey=s
oral statement was the product of custodial interrogation and therefore
inadmissible. 

The State argues
in support of the trial court=s
finding that Hudson, although a law enforcement officer, was off-duty at the
time of his interrogation of Bailey, and was merely acting as an agent for
Child Protective Services.  First, we
hold that the trial court=s
finding that Hudson was off-duty as a Secret Service investigator is not
supported by the evidence.  Hudson told
Bailey that he was a Secret Service agent. 
The reason there was no recording of his interview with Bailey was that
he conducted the examination in accordance with the procedures of the Secret
Service.  He submitted a report of the
examination to the Secret Service, subject to their review.  Hudson acknowledged during the trial that he
was a Secret Service agent 

twenty-four hours per day, seven
days per week, and that his interview with Bailey was on Secret Service
time.  Hudson, when asked if he used
psychological interrogation techniques in his interview with Bailey, stated
that the mere presence of a law enforcement officer was psychological.  When witnessing a written statement by
Bailey, Hudson identified himself as an agent of the Secret Service.  Rather than showing that Hudson was off-duty,
the evidence shows that he was permitted by the Secret Service to volunteer to
perform such polygraph examinations while on duty, time permitting.








Even if we were to
accept the trial court=s
ruling that Hudson was an off-duty officer who was merely an agent of Michelle
Hiza, a worker for Child Protective Services, we are faced with the fact that a
worker for Child Protective Services may or may not be acting as an agent for
law enforcement in such situations.  Compare
Paez v. State, 681 S.W.2d 34, 38 (Tex.Crim.App. 1984) and Cates v. State,
776 S.W.2d 170, 174 (Tex.Crim.App. 1989). 
Finding that the factual situation in this case more closely resembles
that of Cates than that of Paez, we hold that had Michelle Hiza
herself conducted the interrogation, as did Hudson, she would have been an agent
of law enforcement.








The State, in
arguing that the interview with Hudson did not constitute custodial
interrogation, emphasizes that Bailey was not confined on sexual assault
charges at the time of the interview, that the decision to participate in a
polygraph examination was his, that there is no evidence that the interview was
arranged to avoid the requirements of Article 38.22 of the Texas Code of
Criminal Procedure, and that the police did not orchestrate the interview.  In Cates, the Court of Criminal
Appeals held that a DHR investigator, when conducting an interview with one who
is the central figure in a criminal investigation concerning child abuse, is
acting as an agent of law enforcement because her function in pursuing a child
abuser is for the enforcement of Texas child abuse laws.  Cates, 776 S.W.2d at 173.  The investigator has that status even though
the investigator is not acting at the request or as a surrogate for a
traditional police agency.  Id.  If Michelle Hiza=s
status, had she been conducting the interview, would have been that of an agent
for law enforcement, then Hudson, if acting as her agent as the State argues,
would also have been acting as an agent for law enforcement.  The State notes that there was no evidence
that the interview was arranged to avoid the requirements of Article 38.22, but
if it avoids the requirements, it makes no difference whether it was arranged
to do so or not.

We will next
consider the State=s
position that Bailey=s
oral statement given to Hudson was not the product of custodial interrogation
because it was his decision to participate in the polygraph examination, the
examination was not held in a detention facility, and he was not charged with
sexual abuse at the time the interview was conducted.  In determining whether an individual is in
custody, we examine all of the circumstances surrounding the interrogation to
determine whether there was a formal arrest or restraint on freedom of movement
of the degree associated with a formal arrest. 
United States v. Chavez, 281 F.3d 479, 486 (5th Cir. 2002).  The issue is how a reasonable man, innocent
of any crime, in the suspect=s
position would have understood his situation. 
Dancy v. State, 728 S.W.2d 772, 778 (Tex.Crim.App. 1987).

Michelle Hiza
testified that she was assigned the investigation of an outcry that the victim
had made that Bailey had touched her improperly.  She indicated that she followed CPS policy by
informing Detective Tony Bradley of the referral.  She denied that he in any way directed her as
to how she should conduct her investigation. 
She said she contacted Bailey while he was in the Collin County jail on
other charges, and that as far as she knew, he had not been arrested for any
sexual abuse.  She acknowledged that
Bailey told her that he was arrested on warrants, presumably on the other
charges, fifteen minutes after receiving a call from CPS about the sexual abuse
charge.








Hiza testified
that she suggested to Bailey that the only way to clear up the matter was to do
a polygraph.  She said Bailey wanted to
do the polygraph in order to clear the matter up because he knew that he did
not do anything.  Detective Tony Bradley
took Bailey from the jail to the Collin County Children=s
Advocacy Center.  Hudson testified that
Bailey was not in handcuffs, and was free to move his hands and walk about the
room.  Hudson said that the oral
statement was given after he asked Bailey why he had not passed the exam.

In summary, Bailey
was in custody on other charges for which he had been arrested shortly after
receiving notification from CPS concerning the sexual abuse charges.  He was the focus of the investigation because
the child had accused him of being the one who had touched her improperly.  He agreed to take a polygraph examination in
order to clear himself of the charges.  A
sheriff=s office
detective took him from the jail to the Center for the purpose of the polygraph
examination.  The polygraph examiner
informed Bailey that he was an agent of the United States Secret Service.  Before obtaining Bailey=s oral statement, the examiner asked
Bailey why he did not pass the polygraph examination.  There is no indication that he was told by
anyone whether he could or could not leave during his interview with the
polygraph examiner.  Considering the
totality of the circumstances, we hold that a reasonably innocent person in
Bailey=s
position would have thought that he was not free to leave.  Consequently, the trial court abused its
discretion by overruling Bailey=s
objection to the oral statement he made to Hudson.  








The State relies
in part upon the case of Cagle v. State, 23 S.W.3d 590, 592
(Tex.App.--Fort Worth 2000, pet. ref=d).  We find that case to be distinguishable.  In Cagle, the Court held that the
defendant was not in custody when he went to an office of Child Protective
Services voluntarily, he was not placed under arrest, there was testimony that
he could leave at any time, and where he did, in fact, freely leave the office
after the meeting.  Id.  In the case at bar, Bailey was in confinement
for other offenses, was brought to the Center by a sheriff=s deputy, the examination was conducted
by a law enforcement officer, and Bailey was returned to jail after the interview.  Because the oral statement made by Bailey to
Hudson was reduced to writing and also introduced into evidence, we cannot make
a harm analysis until we have determined whether those other statements were
properly admitted.

Bailey urges in
Point of Error Two that the trial court abused its discretion in overruling his
motion to suppress an oral statement that he made to Michelle Hiza, the CPS
investigator.  Michelle Hiza testified
that after Bailey had made an oral statement to Hudson, she went in and he told
her that he was high on cocaine, and that he grabbed the child=s vagina, inserted his finger into it,
and caused it to bleed.  We hold that the
trial court abused its discretion in overruling Bailey=s
motion to suppress his oral statement to Hiza, also for the reason that it was
an unrecorded oral statement that resulted from custodial interrogation.  As with the other oral statement, we cannot
make a harm analysis until our consideration of Bailey=s
other points.








Bailey insists in
Point of Error Three that the trial court abused its discretion by overruling
his motion to suppress a written statement that he gave to Michelle Hiza and
Agent Hudson.  Article 38.22 of the
Texas Code of Criminal Procedure provides that no written statement made by an
accused as a result of custodial interrogation is admissible as evidence unless
on its face it contains what are the equivalent of Miranda warnings and
that the accused, prior to and during the making of the statement, knowingly,
intelligently, and voluntarily waived the rights set out in the warning.  Tex.Code
Crim.Proc.Ann. art. 38.22, '
2.  The written statement that Bailey
gave Hiza contains neither the warnings nor any indication that Bailey waived
his rights as contained in the warnings. 
The State contends that the written statement was not the result of
custodial interrogation.  Inasmuch as we
have held that the statement was the result of custodial interrogation, we
disagree.  Therefore, the trial court
abused its discretion by overruling Bailey=s
motion to suppress this written statement. 
We cannot make a harm analysis until we have considered Bailey=s final point.

Bailey contends in
Point of Error Four that the trial court abused its discretion by overruling
his motion to suppress a written statement that he gave to Detective Ida Wei of
the McKinney Police Department.  Bailey
was returned to jail after the polygraph examination and after he had given
oral and written statements to Hudson and Hiza. 
Approximately four hours after the start of the polygraph examination,
he gave another written statement to Detective Wei.  That written statement contained the proper
warnings and reflected that Bailey voluntarily waived his rights as set forth
in the warnings.  Bailey contends that
although this statement meets the requirements of Article 38.22, we should hold
that it was improperly admitted because it was obtained as a result of the
prior statements that we have found to be inadmissible because of a failure to
record the oral statements and the failure to have warnings and waiver of
rights on the face of the written statement.








Where, as here, a
prior voluntary statement is rendered inadmissible for its failure to meet
certain statutory requirements, ordinarily proof of proper warnings preceding
the subsequent written statement, and a defendant=s
willingness under the totality of circumstances to waive his or her rights
following those warnings, should suffice to meet the State=s burden on the issue of
voluntariness.  Griffin v. State,
765 S.W.2d 422, 430 (Tex.Crim.App. 1989). 
The mere possibility that a defendant might be at a psychological
disadvantage because of having given a prior inadmissible statement, without
evidentiary corroboration, is insufficient to rebut the State=s otherwise adequate showing of
voluntariness.  Id.  We therefore hold that the trial court did
not abuse its discretion in overruling Bailey=s
motion to suppress the written statement he gave to Detective Wei because the
court=s finding
that Bailey=s written
statement was voluntary and met the requirements of Article 38.22 is supported
by the evidence.

Bailey urges that
the trial court did abuse its discretion because the taint of the inadmissible
statements was not so attenuated as to dissipate the taint.  He relies upon Brown v. Illinois, 422
U.S. 590, 95 S.Ct. 2254, 45 L.Ed.2d 416 (1975), Wong Sun v. United States,
371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963), and Perkins v. State,
779 S.W.2d 918 (Tex.App.--Dallas 1989, no pet.).  Both Brown and Wong Sun are
distinguishable because each of those cases involved statements obtained after
an illegal search or arrest, in violation of the Fourth Amendment of the United
States.  Brown, 422 U.S. at
603-04, 95 S.Ct. at 2262, 45 L.Ed.2d at 427; Wong Sun, 317 U.S. at
485-86, 89 S.Ct. at 416, 9 L.Ed.2d at 454. 
The United States Supreme Court held in Oregon v. Elstad, 470
U.S. 298, 105 S.Ct. 1285, 84 L.Ed.2d 222 (1985) that the admissibility of a
voluntary statement given after a statement has been given without the benefit
of Miranda warnings turns solely on whether it is knowingly and
voluntarily made.  Id. at 309, 105
S.Ct. at 1293, 84 L.Ed.2d at 232.  Bailey
does not contend that the written statement that he gave to Detective Wei was
involuntary, only that it was given after oral statements and written
statements were given that did not comply with the statutory requirements of
Article 38.22.  In Perkins,
the Court held that a statement was admissible because any causal chain linking
a confession to an earlier confession in which inadequate Miranda warnings
were given was so attenuated as to purge the second of any taint associated
with the first.  Perkins, 779
S.W.2d at 921, 923.  While we agree with
the holding in Perkins that the second statement was admissible, we note that
the Court=s
discussion as to why Perkins=s
voluntary second statement was admissible does not seem to follow the ruling of
the United States Supreme Court in Oregon v. Elstad.  We overrule Point of Error Four.








We now turn to a
harm analysis with respect to the errors we found in our discussion of Points
of Error One, Two, and Three.  In Bailey=s written statement to Detective Wei,
he admitted poking the child in the vaginal area to shut her up.  He said that it was under a half of an inch
of his index finger.  This is
substantially the same as the oral statement he made to Hudson, the mark he
made for Hudson on the tracing of his hand to show how far in he put his
finger, and the oral and written statement he gave to Hiza.  Inasmuch as there was no contention that
Bailey had not received Miranda warnings prior to the making of the
earlier statements, or that his making of those statements was involuntary, we
conclude that the trial court=s
error in admitting his oral statements to Hudson and his oral and written
statements to Hiza was not a constitutional error.  We are to disregard any error that is not a
constitutional error if it does not affect substantial rights.  Tex.R.App.P.
44.2(b).  A substantial right is affected
when the error has a substantial and injurious effect or influence in
determining the jury=s
verdict.  King v. State, 953
S.W.2d 266, 271 (Tex.Crim.App. 1997).  In
view of the proper admission of substantially the same statement, we hold that
the trial court=s
admissions of Bailey=s
earlier statements did not have a substantial and injurious effect or influence
in determining the jury=s
verdict; therefore, it did not affect any substantial right.  Had the trial court=s
error been constitutional, we would be required to reverse unless we determined
beyond a reasonable doubt that the error did not contribute to Bailey=s conviction or punishment.  Tex.R.App.P.
44.2(a).  Again, given the fact that the
statements improperly admitted were substantially the same as that statement
that was properly admitted, we hold beyond a reasonable doubt that the trial
court=s error
in admitting Bailey=s prior
statements did not contribute to his conviction or his punishment.  We therefore overrule Points of Error One,
Two, and Three. 








The judgment is
affirmed.

 

May
19, 2005

JOHN HILL, Chief
Justice (Ret.)

 

Before Panel No. 5

Barajas, C.J., Chew, J., and Hill, C.J.(Ret.)

Hill, C.J., (Ret.)(Sitting by Assignment)

 

(Publish)